# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | | |
|---|---|---|
| BOBBY D. CURTIS, JR., | ) | |
| | ) | CIVIL FILE ACTION NO.: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRI-STATE WATERPROOFING | ) | JURY TRIAL DEMANDED |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Bobby D. Curtis, Jr., ("Plaintiff"), by and through counsel, and hereby submits his Complaint for Damages against Defendant Tri-State Waterproofing Solutions, LLC, ("Defendant") on the following grounds:

## NATURE AND PURPOSE

1. This is a lawsuit brought due to race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. §1981 ("Section 1981"), and due to violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for failure to pay Plaintiff overtime at the rate of 1 ½ times his regular rate of pay for hours worked in excess of 40 hours in the workweek.

## JURISDICTION

2.      Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 and 29 U.S.C. § 216(b).

3.      This Court is an appropriate venue for Plaintiff's claims because all or a substantial majority of the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

4.      Plaintiff Bobby D. Curtis, Jr. is a resident of the State of Georgia and is entitled to bring actions of this type and nature.

5.      Plaintiff was an "employee" during his employment with Defendant as defined by the FLSA and was entitled to the protections of the FLSA pursuant to 29 U.S.C. §§ 203(e), 207(a) and 215(a).

6.      Defendant is an employer in commerce or in an industry affecting commerce within the meaning of Title VII and has employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

7.      Defendant is a Georgia limited liability company and can be served via its Registered Agent, Robert Marett, at 2222 Hilton Drive, Gainesville, GA 30501.

8.      Defendant had annual gross revenue and volume of sales in excess of $500,000.00 for each year in the relevant period from 2019 to 2022.

9.      At all relevant times, Defendant has continuously been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 207(a).

## ADMINISTRATIVE PROCEEDINGS

10.     Plaintiff filed a Charge for Title VII race discrimination with the Equal Employment Opportunity Commission on September 18, 2022.

11.     Plaintiff received a Notice of Right to Sue within the last ninety (90) days and has complied with all other conditions precedent to this Complaint.

## FACTUAL ALLEGATIONS

12.     Plaintiff is an African American male.

13.     Plaintiff was hired by Defendant at its Acworth location in April 2019 as a Repairman.

14.     Plaintiff's job duties involved repairing foundation cracks in the concrete of residential homes.

### Racial Discrimination, Harassment, Retaliation, and Hostile Work Environment

15.     Plaintiff experienced racial discrimination, harassment, and a hostile work environment while employed at the Acworth location.

16.     In October 2021, Plaintiff was called a "nigger" while working in the construction yard by Eric Collett, a supervisor and believed to be part owner of Defendant's Acworth location.

17. Plaintiff reported this incident to the Defendant's owner Marty Marett, a white "Caucasian" male.

18. Defendant took no disciplinary action against anyone relating to this incident and instead transferred Plaintiff to the Gainesville location in October 2021.

19. The location where Plaintiff was transferred in response to the racial harassment and discrimination – the Gainesville location – contained three Confederate flags and only one other black employee.

20. The other black employee stayed at the Gainesville location for approximately 1 month. After that, Plaintiff was the only black employee.

21. At the Gainesville location, Plaintiff's direct supervisor was Marett.

22. Plaintiff's job position at the Gainesville location was repairing foundation cracks in the concrete of residential homes.

23. Defendant discriminated against Plaintiff in May 2022 by assigning Plaintiff duties to perform by himself that Defendant permitted other, non-black employees to perform in groups. These duties required Plaintiff to ascend and descend many stairs while carrying several rolls MEL-ROL weighing 60 pounds or more.

24. Plaintiff was the only person required to do this type of physical labor alone. Plaintiff suffered injuries to his knees and back due to the work conditions imposed on him due to his race.

25. In May 2022, Plaintiff had to take off 2 days to recover from his physical injuries due to these duties.

26. Soon after, Defendant demoted Plaintiff. Defendant filled Plaintiff pre-demotion position with a white employee who performed Plaintiff's job duties as concrete repair.

27. Plaintiff's new position was janitorial, which Defendant believed was more appropriate for a black, African American worker.

28. Plaintiff was ordered to clean the shop, keep the shop "neat," sweep floors, and walk with the secretary as she performed inventory.

29. On or about August 22, 2022, Marett called Plaintiff over to Marett's truck and told Plaintiff that Marett's son had used the term "nigger". Marett then told Plaintiff to explain the difference between a "nigger" and a "nigga."

30. Plaintiff was shocked by the racial question and told the owner that the slurs were offensive, hateful, and demeaning.

31. In response, Marett asked Plaintiff what he would do if someone called him a "nigger". Plaintiff responded that he would take great offence including physical altercation.

32. The next day, August 23, 2022 Plaintiff was called into Marett's office. Marett told Plaintiff that the police in the area "protected the white people, but not the blacks." Marett thus told Plaintiff that he could call Plaintiff "nigger" and would

5

be protected from physical altercation by the police.

33.     On August 26, 2022, Plaintiff explained to Marett that his statements were discriminatory and racist, and that the Confederate flags appeared to be racist in light of the other racial harassment and discrimination.

34.     At this point, Plaintiff has been called "nigger", transferred to a separate location with multiple Confederate flags, harassed about being black and the word "nigger", been told that a coworker (the owner's son) used the word "nigger", and was told that the police would always protect whites but not blacks, and had been assigned work tasks to perform alone that other white employees were permitted to perform in groups.

35.     Plaintiff had been constructively discharged by this date. Plaintiff told Marett that he could not subject himself any further to the racially hostile work environment, including the use of the word "nigger".

36.     In response, Marett flippantly replied that Plaintiff "took it the wrong way."

37.     The mistreatment and discrimination against Plaintiff at the Gainesville location was also in retaliation for complaining about Collett's use of the word "nigger" at the Acworth location.

38.     In discriminating against Plaintiff, Defendant acted willfully, wantonly, and intentionally to harm Plaintiff and his federally protected rights.

6

39. Defendant also acted in reckless disregard for Plaintiff' federally protected rights.

40. The effect of Defendant's above-stated actions has been to deprive Plaintiff of employment opportunities, income in the form of wages, prospective employment benefits, including social security and other benefits to which he would have been entitled but for Defendant's illegal actions.

41. The effect of Defendant's above-stated actions has also caused Plaintiff to suffer out-of-pocket losses and mental and emotional distress for which he seeks redress.

### FLSA Violations

42. Throughout his employment at the Acworth and Gainesville locations, Plaintiff was a non-exempt employee under the FLSA.

43. Defendant was Plaintiff's employer under the FLSA.

44. Defendant classified Plaintiff as a salaried employee and paid him the same amount each week regardless of the hours worked, except that Defendant sometimes docked Plaintiff's pay if he had to miss work.

45. Plaintiff was required to work, and did work, in excess of 40 hours per week when employed at the Acworth and Gainesville locations.

46. Defendant failed to pay overtime compensation to Plaintiff at the rate of 1 ½ times Plaintiff's regular rate of pay for those hours in the workweek that

exceeded 40 hours.

47.    Defendant is liable for the failure to pay proper overtime under the FLSA.

## COUNT ONE
## TITLE VII RACE DISCRIMINATION

48.    Defendant discriminated against Plaintiff based on his race, African American, in the terms and conditions of his employment, including, but not limited to calling him "nigger", removing him from the job he was hired for, replacing him with a white male, requiring him to work under conditions that white workers were not required to work, telling him that the police protected whites and not blacks in the context of any physical altercation that could ensue upon use of the word "nigger", and assigning him to a janitorial-type role in violation of Title VII.

49.    Defendant also discriminated against Plaintiff based on race when the owner of Defendant used the term "nigger" in a manner so as to antagonize and humiliate him and for other illegal purposes in violation of Title VII.

50.    Defendant's actions were willful, wanton, and intentionally directed to harm Plaintiff.

51.    Defendant's actions were reckless and taken in willful disregard of the probable consequences of its actions.

52.    Because of Defendant's intentional violation of the rights of Plaintiff, secured by Title VII, Plaintiff suffered anguish, humiliation, distress, harm to

8

reputation, inconvenience, physical damage, emotional damage, damage to his professional reputation, and loss of enjoyment of life, entitling him to compensatory damages.

53.    To remedy the violation of Plaintiff's rights, he is entitled to an award of back pay and benefits, compensatory damages, attorney's fee, and all other appropriate damages, remedies and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

## COUNT TWO
## RACE DISCRIMINATION IN VIOLATION OF
## 42 U.S.C. §1981

54.    Plaintiff was discriminated against because of his race, African American, in violation of 42 U.S.C. §1981.

55.    Defendant discriminated against Plaintiff based on his race, African American, in the terms and conditions of his employment, including, but not limited to calling him a "nigger"," removing him from the job he was hired for, replacing him with a white male, requiring him to work under conditions that white workers were not required to work under, telling him that the police protected whites and not blacks in the context of any physical altercation that could ensue upon use of the word "nigger"," assigning him to a janitorial-type role in violation of Section 1981.

56.    Defendant also discriminated against Plaintiff based on race when the owner of Defendant used the term "nigger" in a manner so as to antagonize and

9

humiliate him and for other illegal purposes in violation of Section 1981.

57.     Defendant's actions and failures were the proximate, and but for cause of the harm suffered by Plaintiff as alleged herein.

58.     As such, Defendant subjected Plaintiff to race discrimination regarding the terms and conditions of his employment in violation of 42 U.S.C. §1981.

59.     As Defendant's conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including an award of punitive damages.

## COUNT THREE
## FAIR LABOR STANDARDS ACT VIOLATIONS

60.     At all relevant times, Defendant was engaged in interstate commerce and/or the production of services for commerce, within the meaning of the FLSA, 29 U.S.C. § 207(a).

61.     At all relevant times, Defendant employed Plaintiff within the meaning of the FLSA, 29 U.S.C. §§ 201 *et seq.*

62.     At all relevant times, Defendant had multiple employees (including Plaintiff) who were engaged in commerce or in handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

63.     Defendant had annual gross revenue and volume of sales in excess of $500,000.00 for each year in the relevant period.

64.     At all relevant times, Defendant had a policy and practice of failing to

pay Plaintiff for all hours worked, including overtime hours, in violation of the FLSA.

65.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of the statute, 29 U.S.C. § 255(a).

66.     Plaintiff suffered damages due to Defendant's willful misconduct.

67.     Due to Defendant's FLSA violations, Plaintiff was damaged and is entitled to recover from Defendant compensation for unpaid overtime wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff demands judgment as follows:

(a)     That this Court declare that Defendant's actions, policies and practices complained of herein violate the rights of Plaintiff as secured by state and federal law;

(b)     Special damages and/or liquidated damages for lost wages and benefits;

(c)     Back and front pay and liquidated damages for willful and intentional violations of the FLSA;

(d)     Reasonable attorneys' fees, costs and expenses of litigation;

(e)     Injunctive relief and prohibition of Defendant from engaging in further unlawful conduct of the type described herein;

(f)     Order Defendant to compensate Plaintiff for mental and emotional

11

damages suffered because of Defendant's unlawful and discriminatory acts in an amount to be determined by the enlightened conscience of the jury;

(g)     Award Plaintiff punitive damages;

(h)     Enter a judgment that Defendant's conduct violated Title VII;

(i)     Enter a judgment that Defendant's conduct violated 42 U.S.C. § 1981;

(j)     Enter a judgment that Defendant's conduct violated the FLSA;

(k)     Award Plaintiff front pay as allowed under Title VII and Section 1981;

(l)     Award Plaintiff back pay and lost benefits resulting from Defendant's unlawful discrimination under Title VII and Section 1981;

(m)     Award Plaintiff nominal damages;

(n)     Trial by jury as to all issues;

(o)     Prejudgment interest at the rate allowed by law; and

(p)     All other relief to which he may be entitled.

Respectfully submitted, this 12th day of June 2024.

**HALL & LAMPROS, LLP**

*/s/ Gordon Van Remmen*
Christopher B. Hall
Georgia Bar No. 318380
Gordon Van Remmen
Georgia Bar No. 215512

300 Galleria Pkwy,
Suite 300
Atlanta, GA 30339
T: (404) 876-8100

12

chall@hallandlampros.com
gordon@hallandlampros.com

*Attorneys for Plaintiff*


## <u>CERTIFICATE OF FONT COMPLIANCE</u>

In accordance with Local Rule 7.1D, I do certify this document has been prepared in Times New Roman font, 14 point, in compliance with L.R. 5.1(C) of this Court.

*/s/ Gordon Van Remmen*